IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KRISTIN HARDY,                                    No. 2:13-cv-2514-GEB-CMK-P

    Plaintiff,

  vs.                                             <u>FINDINGS AND RECOMMENDATION</u>

D. SISSON, et al.,

    Defendants.

    Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendant's motion for summary judgment (Doc. 50), plaintiff's opposition thereto (Doc. 60), and defendant's reply brief (Doc. 62).

**I. BACKGROUND**

**A. <u>Plaintiff's Allegations</u>**

    This action proceeds on plaintiff's second amended complaint (Doc. 22) against defendant Sisson, in his official capacity, on the claim that defendant Sisson violated plaintiff's Due Process rights during a prison disciplinary proceeding. Plaintiff alleges defendant Sisson arbitrarily refused to allow plaintiff to question his witness. All other defendants and claims have been dismissed. Defendant moves for summary judgment arguing: 1) plaintiff's official

1

capacity claim fails as a matter of law; 2) plaintiff fails to state a claim for injunctive relief; 3) and plaintiff's due process rights were not violated.

### B. Defendant's Evidence

Defendant has submitted a statement of undisputed facts in support of the motion for summary judgment. The statement of undisputed facts is supported by defendant Sisson's declaration and defendant's responses to plaintiff's interrogatories. Defendant also provided a copy of the Rules Violation Report, plaintiff's Institutional Classification Committee decision, plaintiff's inmate grievance with decisions, and a declaration of records by the prison litigation coordinator authenticating the records provided.

The relevant evidence defendant has submitted is summarized as follows:

- At the time relevant to this action, defendant Sisson was a correctional lieutenant employed by California Department of Corrections and Rehabilitations (CDCR) at High Desert State Prison (HDSP);
- While housed at Pleasant Valley State Prison, plaintiff was issued a prison rules violation report (RVR) for battery on an inmate. According to the RVR, on August 15, 2011, while administering the morning medication, Licensed Vocational Nurse Hernandez was approached by Inmate Sams for his medication. Inmate Sams was holding a towel to the right side of his face. Nurse Hernandez asked Sams what happened and Sams stated that Hardy [plaintiff] hit him in the middle of the night. Sams removed the towel from his face to reveal swelling to the right jaw and a cut next to his right eye. Nurse Hernandez notified Correctional Officer Hernandez of Sams' injures, who in turn notified Correctional Sergeant Mendez of the incident.
- On September 16, 2011, plaintiff was found guilty of battery on an inmate by Senior Hearing Officer Perry.

- As a result of the RVR findings, plaintiff was placed in a Security Housing Unit (SHU) from August 15, 2011 until October 20, 2011.
- Plaintiff successfully appealed the disciplinary findings through the administrative grievance process. As a result, the RVR was vacated, the lost credits were restored, and the disciplinary was ordered reissued and reheard.
- The RVR was reissued, and on February 2, 2012, it was reheard by Senior Hearing Officer Dotson. Dotson found plaintiff guilty of the charge.
- Plaintiff again successfully appealed the disciplinary findings through the administrative grievance process. The third level decision ordered the rules violation reissued and reheard finding the senior hearing officer could not deny plaintiff's request to have the reporting employee present.
- On April 1, 2012, plaintiff was transferred to HDSP.
- On October 16, 2012, plaintiff appeared before defendant Sisson for a second rehearing of the RVR.
- Plaintiff plead not guilty to the prison disciplinary charge, and submitted a written statement in his defense. Plaintiff claimed he was not guilty because there was a lack of visual evidence; a lack of investigation; a lack of witness credibility; no marks, cuts or scratches on plaintiff's hands consistent with a battery; he made no admission of committing the battery; and the reporting employee was not sure if plaintiff committed the battery.
- Plaintiff requested three witnesses at the hearing: the reporting employee, Nurse C. Hernandez, Correctional Sergeant J. Mendez, and Correctional Officer J. Hernandez. Because plaintiff had been transferred to HDSP, the witnesses would be questioned by telephone.
- Plaintiff had an investigative employee (IE) assigned to assist him.

Plaintiff asked questions of these three staff members through the IE, who documented their responses in the IE report.

- According to the IE report, plaintiff asked Officer Hernandez and Sergeant Mendez the same two questions: 1) if they witnessed plaintiff commit a battery on Sams, and 2) if plaintiff admitted to them that he committed a battery on Sams. Both witnesses answered "no" to the questions. Plaintiff also asked six questions of the reporting employee, Nurse Hernandez. Plaintiff asked her 1) if she visually witnessed plaintiff commit a battery on inmate Sams, to which she replied, "no;" 2) if she observed plaintiff at all while she was administering the morning medication, to which she replied, "Yes he was looking out of the cell;" 3) whether plaintiff admitted to her that he battered Sams, to which she replied, "I didn't ask him;" 4) whether she noticed any blood on him when she competed a 7219 report, to which she replied, "I don't recall;" 5) whether there were any marks, cuts, or scrapes on plaintiff's hands and knuckles that would be consistent with a physical act such as battery, to which she replied, "I don't recall;" and 6) whether she was 100 percent sure that plaintiff caused Sams injures and if so why, to which she replied, "no."
- Plaintiff presented defendant Sisson with additional questions for the witnesses to be asked at the hearing. Defendant denied the additional questions.
- The additional questions plaintiff requested, which were denied were: 1) At any time did inmate Sams mention to you why he was assaulted by Inmate Hardy; 2) Did you at any time ask Inmate Sams the reason for the alleged assault; and 3) Were you able to ascertain the reason why Inmate Sams was assaulted by Inmate Hardy.

| | |
|---|---|
| 1 | • Defendant Sisson denied the additional questions as irrelevant,[1] because he |
| 2 | determined that they had no mitigating or refuting value. |
| 3 | • The reporting employee, Nurse Hernandez, was available by phone for the |
| 4 | October 16, 2012, disciplinary hearing. However, because she had already |
| 5 | answered questions and plaintiff's additional questions were denied, she |
| 6 | was not called to testify. |
| 7 | • Defendant Sisson found plaintiff guilty of the charge of battery on an |
| 8 | inmate based on the evidence.[2] Defendant Sisson noted that as a result of |
| 9 | the prior hearing, plaintiff had been assessed ten days loss of yard |
| 10 | privileges with credit for time served due to plaintiff's placement in the |
| 11 | SHU. As a result, plaintiff was not assessed any forfeiture of privileges by |
| 12 | defendant. |
| 13 | • Because there was a delay during the first rehearing of the prison |
| 14 | disciplinary, no forfeiture of credits was assessed by defendant Sisson. |

C. **Plaintiff's Evidence**

Plaintiff disputes some, but not all, of the facts defendant submitted as undisputed. Plaintiff contends there are genuine issues in dispute, and has submitted a statement in response to defendant's separate statement of undisputed facts setting forth which ones he disputes. In support thereof, he has submitted a transcript of his deposition and defendant's responses to interrogatories and requests for admissions. However, plaintiff's opposition to defendant's undisputed facts consists more of argument than facts. For instance, plaintiff argues the facts are in dispute because he disagrees with what happened, such as the sufficiency of the

---

[1] Plaintiff indicates the reasons given are in dispute. However, his argument is a disagreement with the merits of the reasons given, not whether those were in fact the reasons defendant gave in denying plaintiff's questions.

[2] Plaintiff again argues this is in dispute, but his argument goes to the merits of the guilty finding not whether the defendant did in fact find plaintiff guilty.

5

reasons defendant gave for denying plaintiff's additional questions, not the fact that defendant denied plaintiff's additional questions (plaintiff contends the questions asked were not irrelevant). As to the key facts set forth above, unless otherwise noted, plaintiff offers no evidence which contradicts defendant's.

### D. Undisputed Facts

It is clear from the above, that there is no dispute that plaintiff was charged with and found guilty of battery on an inmate. Plaintiff, through an IE, asked questions of three witnesses. During the hearing, plaintiff requested to ask three additional questions of the three witnesses. Defendant denied that request, having determined the questions were irrelevant.

## II. STANDARD FOR SUMMARY JUDGMENT

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard for summary judgment and summary adjudication is the same. See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987). To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted). It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.

        In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury

could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251.

### III. DISCUSSION

Plaintiff alleges defendant violated his due process rights by denying his request to ask three additional questions of the witnesses. Defendant contends that plaintiff fails to state a claim, and alternatively, that the denial of plaintiff's request to ask additional questions of the witness was not a violation of his due process rights.

#### A. Failure to State a Claim

Defendant's first argument is that plaintiff's claim fails as a matter of law as the allegations in the complaint fails to state a claim. In his complaint, plaintiff makes it clear that he brought this action against the defendant in his official capacity only. As such, defendant argues his claim fails because plaintiff does not allege his injuries resulted from a policy, practice, or custom of the agency. Even if there was a policy indicated, defendant Sisson contends he was not in a position to exercise final policy making authority. Thus, defendant argues that plaintiff cannot show his injuries resulted from a policy, practice or custom for which defendant Sisson exercised final policy making authority.

Plaintiff counters that the Eleventh Amendment bar does not apply because he is seeking prospective relief against a state official acting in his official capacity. He further contends that he was not required to demonstrate that a policy, practice or custom led to the denial of his due process and that defendant's citation to Monell v. New York City Dept. of Social Services, 436 U.S. 658 (1978), does not apply and is inapposite.

As defendant Sisson notes, he has not raised an Eleventh Amendment bar in the motion for summary judgment. Instead, defendant challenges whether the facts alleged are sufficient to state a claim.

///

The Supreme Court has explained the difference between personal- and official-capacity suits. "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' " Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citing Scheuer v. Rhodes, 416 U.S. 232, 237-38 (1974); quoting Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690, n. 55 (1978)). "Suits against state officials in their official capacity therefore should be treated as suits against the State." Hafer v. Melo, 502 U.S. 21, 25 (1991) (citing Graham, 473 U.S. at 166). "[I]n an official-capacity action . . . a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official-capacity suit the entity's "policy or custom" must have played a part in the violation of federal law." Graham, 473 U.S. at 166 (citing Polk County v. Dodson, 454 U.S. 312, 326 (1981); Monell, 436 U.S. at 694).

Here, as defendant contends, there are no allegations in the complaint that any policy or custom played a part in the alleged violation of plaintiff's due process rights. Rather, the complaint clearly alleges that it was solely defendant's actions in denying his request to further question the witnesses which violated his due process rights. There are no allegations that there was a policy or custom the defendant was acting pursuant to in denying plaintiff's request. Plaintiff alleges in the complaint that defendant Sisson is a lieutenant responsible for conducting and overseeing various operations within the prison including, but not limited to, disciplinary matters." (Compl., Doc. 1 at 6). He states that the defendants are "sued in their official capacity." (Id.) As relevant to the remaining claim, plaintiff alleges defendant Sisson found plaintiff guilty of battery, a finding which he appealed. In his inmate appeal, plaintiff contended that defendant Sisson violated his due process rights by arbitrarily denying plaintiff's request to call the reporting employee as a witness. (Id. at 11-12). There are no allegations of any policies or customs of arbitrarily denying inmate's requests to question witnesses, and

nothing to indicate there is such a policy or custom. Plaintiff's argument that <u>Monell</u> is inapposite and does not apply is belied by the cases applying it as discussed above. As such, plaintiff's complaint fails to state a claim and the motion for summary judgment should be granted.

### B. Due Process Violation

Alternatively, defendant argues[3] he did not violate plaintiff's due process rights by denying his request to ask irrelevant questions. Defendant acknowledges that an inmate's request to present witnesses or evidence may not be arbitrarily denied, but argues that the right is limited and such a request may be denied as irrelevant, unnecessary or hazardous. Plaintiff acknowledges that presenting witnesses who pose a risk may be denied, but counters that he is otherwise allowed to present his questions to witnesses.

The Due Process Clause protects prisoners from being deprived of life, liberty, or property without due process of law. <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974). In order to prevail on a claim of deprivation of due process, a plaintiff must first establish the existence of a liberty or property interest for which the protection is sought. See <u>Ingraham v. Wright</u>, 430 U.S. 651, 672 (1977); <u>Bd. of Regents v. Roth</u>, 408 U.S. 564, 569 (1972). Due process protects against the deprivation of property where there is a legitimate claim of entitlement to the property. See <u>Bd. of Regents</u>, 408 U.S. at 577. Protected property interests are created, and their dimensions are defined, by existing rules that stem from an independent source – such as state law – and which secure certain benefits and support claims of entitlement to those benefits. See <u>id.</u>

Liberty interests can arise both from the Constitution and from state law. See <u>Hewitt v. Helms</u>, 459 U.S. 460, 466 (1983); <u>Meachum v. Fano</u>, 427 U.S. 215, 224-27 (1976); <u>Smith v. Sumner</u>, 994 F.2d 1401, 1405 (9th Cir. 1993). In determining whether the Constitution

---

[3] Defendant also contends plaintiff fails to state a claim for injunctive relief. However, as the undersigned has recommended granting the motion for summary judgment on two alternative basis, it is unnecessary to address this third.

10

itself protects a liberty interest, the court should consider whether the practice in question ". . . is within the normal limits or range of custody which the conviction has authorized the State to impose." Wolff, 418 U.S. at 557-58; Smith, 994 F.2d at 1405. Applying this standard, the Supreme Court has concluded that the Constitution itself provides no liberty interest in good-time credits, see Wolff, 418 U.S. at 557; in remaining in the general population, see Sandin v. Conner, 515 U.S. 472, 485-86 (1995); in not losing privileges, see Baxter v. Palmigiano, 425 U.S. 308, 323 (1976); in staying at a particular institution, see Meachum, 427 U.S. at 225-27; or in remaining in a prison in a particular state, see Olim v. Wakinekona, 461 U.S. 238, 245-47 (1983).

In determining whether state law confers a liberty interest, the Supreme Court has adopted an approach in which the existence of a liberty interest is determined by focusing on the nature of the deprivation. See Sandin v. Connor, 515 U.S. 472, 481-84 (1995). In doing so, the Court has held that state law creates a liberty interest deserving of protection only where the deprivation in question: (1) restrains the inmate's freedom in a manner not expected from the sentence; and (2) "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 483-84. Prisoners in California have a liberty interest in the procedures used in prison disciplinary hearings where a successful claim would not necessarily shorten the prisoner's sentence. See Ramirez v. Galaza, 334 F.3d 850, 853, 859 (9th Cir. 2003) (concluding that a due process challenge to a prison disciplinary hearing which did not result in the loss of good-time credits was cognizable under § 1983); see also Wilkinson v. Dotson, 544 U.S. 74, 82 (2005) (concluding that claims which did not seek earlier or immediate release from prison were cognizable under § 1983).

With respect to prison disciplinary proceedings which result in the loss of good-time credits, due process requires prison officials to provide the inmate with: (1) a written statement at least 24 hours before the disciplinary hearing that includes the charges, a description of the evidence against the inmate, and an explanation for the disciplinary action taken; (2) an

opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate. See Wolff, 418 U.S. at 563-70. Due process is satisfied where these minimum requirements have been met, see Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), and where there is "some evidence" in the record as a whole which supports the decision of the hearing officer, see Superintendent v. Hill, 472 U.S. 445, 455 (1985). The "some evidence" standard is not particularly stringent and is satisfied where "there is any evidence in the record that could support the conclusion reached." Id. at 455-56. However, a due process claim challenging the loss of good-time credits as a result of an adverse prison disciplinary finding is not cognizable under § 1983 and must be raised by way of habeas corpus. See Blueford v. Prunty, 108 F.3d 251, 255 (9th Cir. 1997).

Here, plaintiff's allegation that his due process rights have been violated is based on defendant Sisson's decision to deny plaintiff's request to ask additional questions of the witnesses. There is no dispute as to the relevant facts. Plaintiff was assigned an investigative employee to assist him as he had been transferred to a different prison prior to the hearing. Through the investigative employee, plaintiff was able to pose questions to three witnesses which were answered. At the hearing, plaintiff then requested to be allowed to pose three additional questions. This request was denied as defendant Sisson determined the questions were irrelevant. The specific questions asked and reasons for the denial are as follows:

> Q-1) "At any time did Inmate Sams mention to you why he was assaulted by Inmate Hardy?"
> The SHO deemed this question to be irrelevant. The actual charge is Battery on an Inmate, the self proclaimed reason, which resulted in the battery, has no mitigating or refuting values in this matter.

> Q-2) "Did you at any time ask Inmate Sams the reason for the alleged assault?"
> The SHO deemed this question to be irrelevant. The self proclaimed reason, which resulted in the battery, has no mitigating or refuting values in this matter. [The witnesses'] possible knowledge of the reason behind the battery has no relevance to the charge.

> Q-3) "Where you able to ascertain the reason why Inmate Sams
> was assaulted by Inmate HARDY?"
> The SHO deemed this question to be irrelevant. (Same question as
> above)

(Doc. 50-2 at 22).

Plaintiff alleged in his complaint that defendant Sisson, the senior hearing officer (SHO) at his disciplinary hearing, arbitrarily denied his request to question witnesses. However, the undisputed evidence show the decision to deny plaintiff's request was not arbitrary, but was denied as the questions were irrelevant. As defendant argues in his motion, with limited exceptions, the reason motivating a battery does not negate the offense and is not relevant to the charge. The elements of simple battery are (1) the defendant willfully and unlawfully touched a person; and (2) the touching was done in a harmful or offensive manner. See Cal. Penal Code § 242; CALCRIM No. 960. Similarly, "[u]nder California civil law, the elements of a battery are as follows: (1) defendant intentionally did an act that resulted in harmful or offensive contact with the plaintiff's person, (2) plaintiff did not consent to the contact, and (3) the contact caused injury, damage, loss or harm to the plaintiff. Garcia v. City of Merced, 637 F.Supp.2d 731, 748 (E.D. Cal. 2008) (citing Tekle ex re. Tekle v. U.S., 457 F.3d 1088, 1102 (9th Cir. 2006)). Defendant argues, and plaintiff does not dispute, that plaintiff did not defend against the charge of battery based on self-defense nor did he offer any other defense where motive would have been relevant. The undisputed evidence in this case shows the defendant did not arbitrarily deny plaintiff's right to call witnesses and present a defense. Rather, plaintiff was provided the opportunity to ask questions of the witnesses prior to the hearing, the witnesses were made available for additional questioning at the hearing, but that the proposed questions were irrelevant and denied as such. The undersigned recommends granting the motion for summary judgment on this alternative basis as well.

## IV. CONCLUSION

The undersigned finds no genuine issue as to any material fact. The undisputed

facts show defendant Sisson denied plaintiff's request to further question the witnesses on the basis that the questions were irrelevant. There are no allegations that any policy or customs were a motivating basis for the denial. To the extent plaintiff brings this action against the defendant in his official-capacity, the complaint fails to state a claim as plaintiff fails to attribute the defendant's action to a policy or custom. Alternatively, plaintiff fails to meet his burden to show any evidentiary support for his claim that the defendant arbitrarily denied his request to further question the witnesses. Plaintiff's request to pose additional questions was denied as the questions were irrelevant. As such, no violation of his due process rights has be shown.

Based on the foregoing, the undersigned recommends that:

1. Defendants' motion for summary judgment (Doc. 50) be granted;
2. Judgment be entered in favor of defendant; and
3. The Clerk of the Court be directed to enter judgment and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 6, 2017

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE